| | |
|---|---|
| FEDERAL EXPRESS CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>DIMITAR S. PETLECHKOV,<br><br>    Defendant. | CIVIL ACTION FILE<br>NO. 1:15-CV-2565-TWT |

**OPINION AND ORDER**

This is an action for fraud. It is before the Court on the Defendant Dimitar Petlechkov's Motion for Summary Judgment [Doc. 99] and the Plaintiff Federal Express Corporation's Motion for Partial Summary Judgment [Doc. 102]. For the reasons set forth below, the Defendant Dimitar Petlechkov's Motion for Summary Judgment [Doc. 99] is GRANTED, and the Plaintiff Federal Express Corporation's Motion for Partial Summary Judgment [Doc. 102] is DENIED.

## I. Background

The Plaintiff Federal Express Corporation is an all-cargo airline engaged in the business of domestic and international transportation of cargo.[1] The Plaintiff offers standard shipping rates, but customers can receive specially negotiated discounted shipping rates, called "earned discounts," based on shipping volumes.[2] These discounted rates are detailed in the contracts between the Plaintiff and its customers.[3] The Plaintiff also allows customers to create shipping accounts.[4] Large customers often have several shipping accounts that are linked to the customers "national" account, which allows the linked accounts to receive the same discounted rates as the national account.[5] For example, General Dynamics Corporation has over one thousand FedEx shipping accounts for its various subsidiaries and business locations.[6] These subsidiary accounts can be linked to the General Dynamics national account, which

---

[1] Pl.'s Statement of Material Facts in Supp. of Mot. for Partial Summ. J. ¶ 1.

[2] Pl.'s Statement of Material Facts in Supp. of Mot. for Partial Summ. J. ¶ 5; Def.'s Statement of Material Facts in Supp. of Mot. for Summ. J. ¶¶ 4-5.

[3] Pl.'s Statement of Material Facts in Supp. of Mot. for Partial Summ. J. ¶ 5.

[4] *Id.* ¶ 2.

[5] *Id.*

[6] *Id.* ¶ 3.

allows the subsidiary accounts to use the national account's discounted shipping rates.[7]

On November 12, 2008, the Defendant Dimitar Petlechkov opened FedEx shipping account number *1589, which did not receive any discounted shipping rates.[8] On January 7, 2009, the Defendant called Charles Fulcher, the FedEx account executive for the National Steel and Shipbuilding Company ("NASSCO"), an affiliate of General Dynamics.[9] General Dynamics's discounted shipping rates applied to all of its affiliates, including NASSCO.[10] During this phone call, the Defendant represented to Mr. Fulcher that he was a vendor for NASSCO, which was untrue.[11] The Defendant further told Mr. Fulcher that he would be shipping computer equipment, electronics, and shipping supplies for NASSCO, which was also untrue.[12]

---

[7] *Id.* ¶ 4.

[8] Pl.'s Statement of Material Facts in Supp. of Mot. for Partial Summ. J. ¶¶ 6-7; Def.'s Statement of Material Facts in Supp. of Mot. for Summ. J. ¶ 6.

[9] Pl.'s Statement of Material Facts in Supp. of Mot. for Partial Summ. J. ¶¶ 11-12.

[10] Def.'s Statement of Material Facts in Supp. of Mot. for Summ. J. ¶ 10.

[11] Pl.'s Statement of Material Facts in Supp. of Mot. for Partial Summ. J. ¶¶ 13-14.

[12] *Id.* ¶ 15.

The Defendant provided this information in order to obtain NASSCO's discounted shipping rates.[13]

After this phone conversation, the Plaintiff linked the Defendant's FedEx shipping account to General Dynamics's account, allowing it to receive General Dynamics's national discount.[14] The Defendant then began advertising and offering shipping services over the internet.[15] From February 23, 2009 to May 20, 2014, the Defendant would "resell" a fraction of this discount to third parties.[16] The Defendant would have his customers choose the "bill third party option" when preparing their shipments, and have them bill his FedEx shipping account. The Defendant would offer his customers a lower shipping rate than what they received directly from the Plaintiff, but more than what he would pay the Plaintiff, enabling him to make a profit.[17] The

---

[13] *Id.* ¶ 16.

[14] Pl.'s Statement of Material Facts in Supp. of Mot. for Partial Summ. J. ¶¶ 17-18; Def.'s Statement of Material Facts in Supp. of Mot. for Summ. J. ¶ 15.

[15] Pl.'s Statement of Material Facts in Supp. of Mot. for Partial Summ. J. ¶¶ 17-18.

[16] Def.'s Statement of Material Facts in Supp. of Mot. for Summ. J. ¶ 22. The parties seem to disagree as to when the Plaintiff shut down the Defendant's account. The Plaintiff contends that it shut down the Defendant's account on April 18, 2014, while the Defendant contends that the Plaintiff shut the account down on May 20, 2014. Pl.'s Statement of Material Facts in Supp. of Mot. for Partial Summ. J. ¶ 28; Def.'s Statement of Material Facts in Supp. of Mot. for Summ. J. ¶ 22.

[17] *Id.* ¶¶ 22, 26.

Plaintiff would send the Defendant a bill for the services provided to this FedEx account number, and the Defendant would pay the bill with his personal credit card.[18]

The Plaintiff ultimately discovered that the Defendant was not associated with General Dynamics after the Defendant called the Plaintiff's customer service department with a complaint.[19] The Plaintiff contacted General Dynamics, and then shut down the Defendant's account.[20] The Plaintiff then filed this action on July 17, 2015. In its First Amended Complaint, the Plaintiff alleges claims for fraud, tortious interference with business relations, and unjust enrichment.[21] Both parties now move for summary judgment.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[22] The court should view the

---

[18] *Id.* ¶ 24.

[19] Def.'s Statement of Material Facts in Supp. of Mot. for Summ. J. ¶ 57.

[20] *Id.*

[21] The Plaintiff also asserted a claim for breach of contract in its First Amended Complaint. However, the parties later stipulated to the Plaintiff's voluntary dismissal of its breach of contract claim. *See* Stipulation of Dismissal of Count III [Doc. 95].

[22] FED. R. CIV. P. 56(a).

evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[23] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[24] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists.[25] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[26]

### III. Discussion

**A. Choice of Law**

The parties first dispute which state's law should govern. The Plaintiff argues that Tennessee law should apply, while the Defendant argues that Georgia law should apply.[27] This case is before the Court based on diversity jurisdiction. The Court therefore looks to Georgia's choice of law requirements to determine the appropriate

---

[23] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

[24] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[25] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

[26] *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

[27] Def.'s Mot. for Summ. J., at 11; Pl.'s Mot. for Partial Summ. J., at 5-7.

rules of decision.[28] Georgia follows the traditional approach of *lex loci delecti* in tort cases, which generally applies the substantive law of the state where the last event occurred necessary to make an actor liable for the alleged tort.[29] Usually, this means that the "law of the place of the injury governs rather than the law of the place of the tortious acts allegedly causing the injury."[30] Under this approach, Tennessee law would govern since the Plaintiff felt this financial injury at its headquarters in Memphis, Tennessee.[31] However, there is an exception when the law of the foreign state is the common law. "[T]he application of another jurisdiction's laws is limited to statutes and decisions construing those statutes. When no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law."[32] Since no Tennessee statute is involved, the Court will apply Georgia law.

---

[28] *Frank Briscoe Co., Inc. v. Ga. Sprinkler Co., Inc.*, 713 F.2d 1500, 1503 (11th Cir.1983) ("A federal court faced with the choice of law issue must look for its resolution to the choice of law rules of the forum state.").

[29] *Dowis v. Mud Slingers, Inc.*, 279 Ga. 808, 816 (2005); *Int'l Bus. Machines Corp. v. Kemp*, 244 Ga. App. 638, 640 (2000).

[30] *Mullins v. M.G.D. Graphics Sys. Grp.*, 867 F. Supp. 1578, 1581 (N.D. Ga. 1994).

[31] Pl.'s Statement of Material Facts in Supp. of Mot. for Partial Summ. J. ¶ 32.

[32] *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 677 (N.D. Ga. 2003) (internal quotations omitted). The Georgia Supreme Court has recently reaffirmed this exception. *See Coon v. The Med. Ctr., Inc.*, 300 Ga. 722, 729 (2017) ("In the absence

**B. Fraud**

Both parties move for summary judgment on the Plaintiff's fraud claim. The Defendant argues that he is entitled to summary judgment because the merger clause in the shipping agreement extinguishes his misrepresentations, because the Plaintiff blindly relied upon his misrepresentations, and because the fraud claim is barred by the statute of limitations.[33] The Plaintiff also moves for summary judgment on this claim, arguing that the Defendant admitted to all of the conduct necessary to establish a claim for fraud during his deposition.[34] The Court concludes that the Defendant is entitled to summary judgment on this claim. "To maintain an action in fraud, a claimant must prove: (1) false representation by a defendant; (2) scienter; (3) intention to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damages."[35] "In order to survive a motion for summary judgment, plaintiff must show some evidence as to each element."[36]

---

of a statute, however, at least with respect to a state where the common law is in force, a Georgia court will apply the common law as expounded by the courts of Georgia.").

[33] Def.'s Mot. for Summ. J., at 11-16.

[34] Pl.'s Mot. for Partial Summ. J., at 7-13.

[35] *Fowler v. Overby*, 223 Ga. App. 803 (1996).

[36] *Hanlon v. Thornton*, 218 Ga. App. 500, 501 (1995).

Here, the Plaintiff has failed to meet its burden in establishing justifiable reliance. In order to prove justifiable reliance, "a party must show that he exercised his duty of due diligence."[37] "Fraud cannot be the basis of an action if it appears that the party alleging the fraud had equal and ample opportunity to prevent it and yet made it possible through the failure to exercise due diligence."[38] "[I]t must be shown that one who relied upon the representations of another used the means available to him, in the exercise of diligence, to discover the truth."[39] "One failing to inform himself, but having equal opportunity of learning the truth, must suffer the consequences of his neglect."[40] "While questions of due diligence often must be resolved by the trier of fact, that is not always the case. One may fail to exercise due diligence as a matter of law."[41]

---

[37] *Martin v. Centre Pointe Invs., Inc.*, 310 Ga. App. 253, 257 (2011).

[38] *Reeves v. Edge*, 225 Ga. App. 615, 618 (1997).

[39] *Jung v. Cheoun*, 216 Ga. App. 490, 491 (1995) (internal quotations omitted).

[40] *Id.*

[41] *Fowler v. Overby*, 223 Ga. App. 803, 804 (1996); *see also Martin v. Centre Pointe Invs.*, 310 Ga. App. 253, 257 (2011) ("While justifiable reliance, more often than not, is a jury issue, summary judgment may be appropriate if the means of ascertaining the relevant facts are equally available to all parties.").

For example, in *Dyer v. Honea*, the Georgia Court of Appeals concluded that the plaintiff failed to establish justifiable reliance as a matter of law.[42] There, the plaintiff purchased a restaurant from the defendant.[43] The plaintiff alleged that the defendant misrepresented the profitability of the restaurant in the profit and loss statements provided to the plaintiff.[44] The court concluded, however, that the plaintiff failed to establish justifiable reliance because he did not request a copy of the documents he relied upon, did not have an accountant review the documents, and took no action to independently verify the accuracy of the information provided.[45] Thus, his fraud claim failed as a matter of law.

Similarly, in *Bennett v. Clark*, the Georgia Court of Appeals concluded that the plaintiff unjustifiably relied upon the defendant's misrepresentations concerning the purchase of a house.[46] There, the plaintiff alleged that the defendant misrepresented

---

[42] *Dyer v. Honea*, 252 Ga. App. 735, 737-38 (2001).

[43] *Id.* at 735.

[44] *Id.*

[45] *Id.* at 738 ("Despite his acknowledged difficulty comprehending financial statements, Dyer deposed that he neither requested copies of the documents nor sought out an accountant to review them. The evidence demonstrates conclusively that he took no action to independently verify the accuracy of the data allegedly presented by Knight. Such blind reliance precludes his fraud claim as a matter of law.").

[46] *Bennett v. Clark*, 192 Ga. App. 698, 699 (1989).

the interest rate and date of maturity of an existing mortgage loan on the property.[47] The court held, however, that the plaintiff's failure to verify the accuracy of the loan figures was a form of "blind reliance" that was unjustified as a matter of law.[48]

Here, the Plaintiff failed to justifiably rely as a matter of law. The Plaintiff has provided no evidence that it performed any type of due diligence to verify the accuracy of the Defendant's representations, as Georgia law requires. Instead, the Plaintiff blindly relied upon the Defendant's representation that he was associated with General Dynamics and linked him to General Dynamics's account. The Plaintiff has not shown that it performed even the most basic attempt to determine whether the Defendant's representations were true. There are a number of ways that the Plaintiff could have done so.[49] For example, Andrew Newbon, a Worldwide Account Manager

---

[47] *Id.* at 698-99.

[48] *Id.* at 699 ("More importantly, it is apparent without dispute from the record that the appellant neither asked any of the appellees to affirm the accuracy of the loan figures shown in the multiple-listing advertisement nor otherwise sought to verify the correctness of these figures. Under such circumstances, his blind reliance on the correctness of the figures taken from the multiple-listing ad must be considered unjustified as a matter of law."); *see also Consulting Constr. Corp. v. Edwards*, 207 Ga. App. 296, 298 (1993) ("Before signing the sales contract, appellants did not request that appellee disclose income tax records for the purpose of verifying appellee's statements regarding the gross receipts of the business they were purchasing. They simply accepted appellee's figure. Under these circumstances, their blind reliance on this figure must be considered unjustified as a matter of law.").

[49] *See Walden v. Smith*, 249 Ga. App. 32, 35 (2001) ("Here, the actual amount paid by the Bryants was a matter of public record and readily ascertainable

for the Plaintiff, testified that there were multiple steps he would take to verify that accounts should be linked. These included looking at the name of the alleged affiliate, researching the parent company, and ultimately contacting the parent company to get their approval if necessary.[50] The Plaintiff has failed to offer evidence that it took any steps similar to these. Therefore, although justifiable reliance is ordinarily an issue of fact for the jury to determine, the Plaintiff's failure to offer evidence that it exercised due diligence makes summary judgment on this claim appropriate.

The Plaintiff responds that its reliance upon the Defendant's misrepresentation is reasonable when the totality of the circumstances is taken into account.[51] The Plaintiff emphasizes that fraud can be difficult to detect because it has over two hundred million customers; that General Dynamics has over one thousand shipping accounts; and that the Defendant engaged in the same scam against DHL, another shipping company.[52] The Plaintiff's response is unpersuasive. Each of these arguments

---

upon inquiry. After the Bryants declined to reveal the purchase price, the Waldens could have easily obtained this information by examining public documents before buying the property.").

[50] Federal Express Corp. Dep. at 24, 210-12.

[51] Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 5.

[52] *Id.*

show that detecting fraud can be difficult.[53] However, they do not prove that the Plaintiff's reliance was reasonable. These arguments do not address the fact that the Plaintiff made no attempt to verify the veracity of the Defendant's representations. For its reliance to be reasonable, the Plaintiff must have taken some kind of affirmative step to determine whether the representations are true.[54] Whether the fraud was difficult to detect is not, on its own, determinative in this analysis. Therefore, since the Plaintiff has failed to provide evidence that it exercised its duty of due diligence, it fails to establish justifiable reliance as a matter of law.

Furthermore, in response to the Defendant's assertion that the Defendant "made no attempt to determine the veracity of Mr. Petlechkov's representation,"[55] the Plaintiff states that Mr. Fulcher, the Plaintiff's account executive, "does not remember the incident, thus it cannot be absolutely stated that FedEx 'made no attempt to

---

[53] The Defendant also offers evidence of a number of red flags that should have made this conduct detectable. This includes the fact that the Defendant used a UPS store as his physical address for his account, that he used the email address "ybuyus@yahoo.com" as the email address for his account, that he had most shipments sent to residential addresses, and that he paid for his bills using a personal credit card. Def.'s Statement of Material Facts in Supp. of Mot. for Summ. J. ¶¶ 18, 28, 33-36; Pl.'s Statement of Material Facts in Supp. of Mot. for Partial Summ. J. ¶ 24. The Plaintiff's failure to exercise due diligence in the face of these red flags further makes its reliance unreasonable.

[54] *Martin v. Centre Pointe Invs., Inc.*, 310 Ga. App. 253, 257 (2011).

[55] Def.'s Statement of Material Facts in Supp. of Mot. for Summ. J. ¶ 16.

determine the veracity' of Petlechkov's representation."[56] This response ignores the fact that the Plaintiff bears the burden of proof on each element of its fraud claim, including justifiable reliance. It must provide evidence that it exercised its duty of due diligence to establish justifiable reliance. The Plaintiff's responsive statement that "it cannot be absolutely stated" that the Plaintiff made no attempt to exercise due diligence does not satisfy this evidentiary burden.

The Plaintiff also offers deposition testimony that Mr. Fulcher does not remember speaking with the Defendant, but that if he had linked the Defendant's account to the General Dynamics's discount, then he must have been convinced that the Defendant was entitled to the discounts.[57] However, a reasonable jury would not conclude, based only upon this speculation as to how Fulcher believes he would have acted, that the Plaintiff satisfied the justifiable reliance requirement. Therefore, since the Plaintiff cannot as a matter of law establish justifiable reliance, its fraud claim fails.[58]

**C. Tortious Interference**

---

[56] Pl.'s Response to Def.'s Statement of Material Facts ¶ 16.

[57] Federal Express Corp. Dep. at 114-15.

[58] Because the Plaintiff has failed to establish an essential element of its fraud claim, it is unnecessary for the Court to address causation, damages, and the statute of limitations.

Both parties also move for summary judgment as to the Plaintiff's claim for tortious interference with business relations.[59] "Tortious interference with business relations is a distinct and separate tort from that of tortious interference with contractual relations, although some of the elements of the two torts are similar."[60] "To recover under a theory of tortious interference with business relations, a plaintiff must show defendant: (1) acted improperly and without privilege, (2) acted purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) caused plaintiff financial injury."[61] "The malice element of the cause of action 'is broadly construed to encompass any unauthorized interference or any interference without legal justification or excuse.'"[62]

However, the Plaintiff fails to establish that the Defendant induced a third party to either not enter into or continue a business relationship with the Plaintiff. This inducement is an "essential element" of a claim for tortious interference with business

---

[59] Def.'s Mot. for Summ. J., at 17; Pl.'s Mot. for Partial Summ. J., at 16-17.

[60] *Renden, Inc. v. Liberty Real Estate Ltd. P'ship III*, 213 Ga. App. 333, 334 (1994).

[61] *Renden, Inc.*, 213 Ga. App. at 334 (citing *Integrated Micro Sys. v. NEC Home Electronics*, 174 Ga. App. 197, 200 (1985)).

[62] *Walker v. Gowen Stores LLC*, 322 Ga. App. 376, 377-78 (2013) (quoting *Camp v. Eichelkraut*, 246 Ga. App. 275, 278 (2000)).

relations.[63] For example, evidence that individuals were "blacklisted" in the surety business did not satisfy the inducement requirement because it did not prove that any entity refused to hire them for work they would have otherwise received.[64] Here, the Plaintiff has not shown that any third parties ended their business relationship with the Plaintiff or decided not to enter into a business relationship with it. The Plaintiff provided evidence that the Defendant enabled third parties to receive shipping discounts to which that they were not entitled to receive. However, this does not prove that any third parties ended their business relationship with the Plaintiff. Therefore, the Plaintiff's claim for tortious interference with business relations fails.

The Plaintiff argues that this element is satisfied because the Defendant "took customers away from FedEx by giving them discounted shipping rates to which these customers were not entitled, but which ironically still allowed them to ship with FedEx."[65] However, this argument fails because the customers did not end their business relationship with the Plaintiff. The Plaintiff even admits in that argument that the customers still shipped with the Plaintiff. These customers continued to use the Plaintiff's services, but instead paid for the shipments by using third-party billing.

---

[63] *Camp v. Eichelkraut*, 246 Ga. App. 275, 279 (2000).

[64] *Id.*

[65] Pl.'s Mot. for Partial Summ. J., at 17.

This does not amount to a discontinuation of business relations. Therefore, this claim fails as a matter of law.

**D. Unjust Enrichment**

Next, both parties move for summary judgment as to the Plaintiff's claim for unjust enrichment. "A claim of unjust enrichment will lie if there is no legal contract and 'the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefited party equitably ought to return or compensate for.'"[66] "The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received . . . ."[67]

"For unjust enrichment to apply, 'the party conferring the labor and things of value must act with the expectation that the other will be responsible for the cost.'"[68] "Otherwise, that party, like one who volunteers to pay the debt of another, has no right to an equitable recovery."[69] "Thus, a claim for unjust enrichment exists where a

---

[66] *Jones v. White*, 311 Ga. App. 822, 827 (2011) (quoting *Smith v. McClung*, 215 Ga. App. 786, 789 (1994)).

[67] *Scott v. Mamari Corp.*, 242 Ga. App. 455, 458 (2000) (quoting *Reidling v. Holcomb*, 225 Ga. App. 229, 232 (1997)).

[68] *Morris v. Britt*, 275 Ga. App. 293, 294 (2005) (quoting *Hollifield v. Monte Vista Biblical Gardens*, 251 Ga. App. 124, 131 (2001)).

[69] *Id.*

plaintiff asserts that the defendant induced or encouraged the plaintiff to provide something of value to the defendant; that the plaintiff provided a benefit to the defendant with the expectation that the defendant would be responsible for the cost thereof; and that the defendant knew of the benefit being bestowed upon it by the plaintiff and either affirmatively chose to accept the benefit or failed to reject it."[70]

The Plaintiff's claim for unjust enrichment fails. A plaintiff is not entitled to recovery for unjust enrichment unless it conferred the benefits provided with the expectation that the defendant would be responsible for the cost.[71] Here, the Plaintiff has not shown that it provided the discounts to the Defendant with the expectation that the Defendant would be responsible for the cost of these discounts. Instead, it is a benefit the Plaintiff provides to its customers based on their shipping volume.[72] There is no indication that the Plaintiff expects to receive compensation for these discounts. Therefore, the Plaintiff's unjust enrichment claim fails as a matter of law, and the Defendant is entitled to summary judgment on this claim.

**E. Attorneys' Fees**

---

[70] *Campbell v. Ailion*, 338 Ga. App. 382, 387 (2016).

[71] *Morris v. Britt*, 275 Ga. App. 293, 294 (2005).

[72] Pl.'s Statement of Material Facts in Supp. of Mot. for Partial Summ. J. ¶ 5.

Finally, the Defendant moves for summary judgment as to the Plaintiff's request for attorneys' fees. The Defendant argues that the Plaintiff "asks to recover attorneys' fees without identifying any law or reason why the American Rule should not apply."[73] The Plaintiff provides no response. The Court agrees with the Defendant. "As a general rule, Georgia law does not allow for the recovery of attorney's fees unless authorized by statute or contract."[74] Here, the Plaintiff has provided no statute under which it claims it is entitled to attorneys' fees. It also provides no response to the Defendant's argument. Therefore, the Plaintiff's request for attorneys' fees fails.

## IV. Conclusion

For the reasons stated above, the Defendant Dimitar Petlechkov's Motion for Summary Judgment [Doc. 99] is GRANTED, and the Plaintiff Federal Express Corporation's Motion for Partial Summary Judgment [Doc. 102] is DENIED.

SO ORDERED, this 14 day of December, 2017.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[73] Def.'s Mot. for Summ. J., at 25.

[74] *Hammock v. Wal-Mart Stores, Inc.*, No. 1:10-cv-04119-SCJ, 2013 WL 11897800, at *3 (N.D. Ga. Feb. 1, 2013) (citing *Money v. Thompson & Green Mach. Co.*, 155 Ga. App. 566 (1980)).